UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TEDDY MCKENZIE #151647
DAVID W. SMITH #246504
MATTHEW PETER ONON #409263
JAMES LOVE, III #306258
JAMES PADGETT #255272
STEVEN HOROWITZ #311640

Plaintiffs,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS, et al.,

Defendants.

Case No. 2:13-cv-291

Hon. Gordon J. Quist

**OPINION**

This is a civil rights action brought by six state prisoners pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs' action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiffs Teddy McKenzie, David W. Smith, Matthew Peter Onon, James Love, James Padgett, and Steven Horowitz, state prisoners who are currently incarcerated at the Chippewa Correctional Facility (URF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michigan Department of Corrections (MDOC), Daniel Heyns, Dennis Straub, Jeffrey Woods, James Bolton, Unknown Shuh, and M. McLean.

In their complaint, Plaintiffs allege that they are adherents to Judaism and require a Kosher diet to practice their religion. Beginning on September 22, 2013, Defendants implemented a vegan menu for all religious diets pursuant to MDOC Policy Directive 05.03.150, forcing Plaintiffs to become strict vegetarians. Plaintiffs assert that a vegan diet does not meet their needs and quote Bible passages in support of their claim that they are required to eat meat and dairy in accordance with "God's dietary laws."

Plaintiffs state that Defendants' conduct violates their right to freely exercise their religious beliefs. Plaintiffs seek a preliminary and permanent injunction, as well as costs.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Plaintiffs may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama*

*v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

As noted above, Plaintiffs claim that the implementation of Policy Directive 05.03.150 violates their rights under the First Amendment. While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; *accord Turner v. Safley*, 482 U.S. 78, 89 (1987). First Amendment protection extends to all religious beliefs, and guaranties "religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian faith ...." *County of Allegheny v. ACLU*, 492 U.S. 573, 615 (1989).

To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). Likewise, RLUIPA provides in pertinent part that, "[n]o government shall impose a substantial burden on the religious

exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden ...” furthers “a compelling governmental interest” and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a) (1)-(2). RLUIPA’s institutionalized-persons provision alleviates exceptional government-created burdens on private religious exercise. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

Although RLUIPA does not define “substantial burden”, courts apply the traditional substantial burden test, as defined by the Supreme Court’s free exercise jurisprudence. *Episcopal Student Found. v. City of Ann Arbor*, 341 F.Supp.2d 691, 701 (E.D.Mich.2004) (citations omitted). A “substantial burden” requires something more than an incidental effect on religious exercise. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) (a substantial burden has “a tendency to coerce individuals into acting contrary to their religious beliefs”); *Hobbie v. Unemployment Appeals Comm’n of Fla.*, 480 U.S. 136, 141 (1987) (there is a substantial burden where a regulation puts “substantial pressure on an adherent to modify his behavior and to violate his beliefs”); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226-27 (11th Cir.2004) (a substantial burden must place more than an inconvenience on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir.2003) (substantial burden is “one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable”).

MDOC Policy Directive 05.03.130, the policy of which Plaintiffs complain, provides in pertinent part:

> PP. The Department offers a religious menu to meet the religious dietary needs of prisoners. The Department will begin offering a Vegan menu which will replace all currently approved religious menus on the following dates for the listed facilities:

1. The week of September 15, 2013: Newberry Correctional Facility, Macomb Correctional Facility, Baraga Correctional Facility, Ionia Correctional Facility, Central Michigan Correctional Facility.

2. The week of September 22, 2013: Alger Correctional Facility, Chippewa Correctional Facility, Carson City Correctional Facility, St. Louis Correctional Facility, Muskegon Correctional Facility, Earnest C. Brooks Correctional Facility.

3. The week of September 29, 2013: Oaks Correctional Facility, Parnall Correctional Facility, Lakeland Correctional Facility, Women's Huron Valley Correctional Facility (Forensic Center).

> The Vegan menu shall comply with Kosher and Halal religious tenets. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals". The Deputy Director or designee shall determine at which facilities religious meals will be offered.

*See* Policy Directive 05.03.150 ¶ PP (effective date 07/26/2013)).

Plaintiffs state that they requested an alternative Kosher menu, which would include meat, but those requests were denied. Plaintiffs contend that certain Bible passages require them to eat meat and dairy, stating:

> All meat must come from animals with a split hoof and who chew its cud such a [sic] deer, cow, sheep or goat. Fish must have had fins and scales. All dairy products must be derived from "kosher" animals. Preparation can render an otherwise "kosher" meal non-kosher if strict guidelines are not followed.
>
> They explained that they must follow all of God's laws including God's dietary laws otherwise they could not be God's chosen one. [See, Deuteronomy 14 and Levitious [sic] 11:44]. In short, they entered into a personal covenant with God as in the days of Noah, in

> effect a contract, that they must eat meat and dairy in accordance with God's dietary laws. [See, Genesis 9:1-17; Deuteronomy 4:3-5].

*See* Plaintiffs' complaint, ¶ 1, p. 2.)

Plaintiffs fail to allege facts demonstrating that a Kosher vegan diet places a substantial burden on their ability to practice the tenets of the Jewish faith. The Court notes that Plaintiffs' assertion regarding the alleged quotations from the Bible[1] appears to be no more than an attempt to justify their desire to continue on a Kosher non-vegan diet, as it overlooks the fact that nothing in the above passage requires the consumption of dairy and meat. Rather, it merely specifies which animals and dairy may be consumed. Although Plaintiffs may prefer to eat meat and dairy as part of their Kosher diet, the facts they have alleged fail to show, or support a reasonable inference, that the consumption of meat and dairy is sufficiently significant to an adherent of the Jewish faith that being denied meat and dairy imposes a substantial burden on the adherent's ability to freely exercise his or her religion. Therefore, Plaintiffs have failed to show that their rights are being violated by the provision of a vegan diet which complies with Kosher religious tenets.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Moreover, because Plaintiffs' claims lack merit, their pending motion for a preliminary injunction (docket #1) is DENIED as moot.

[1]For purposes of this opinion, the Court accepts that the Bible passages are as Plaintiffs claim.

Furthermore, the motions for reconsideration filed by Plaintiffs McKenzie, Onon, and Padgett (docket ##10-12), which request that they have their claims considered without payment of an initial filing fee, are also DENIED as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.

Dated: November 8, 2013

/s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE